# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 96-2448

———————

Maurice Porchia,                        *
                                        *
       Plaintiff-Appellant,         *
                                        *
The Travelers Insurance                 *
Company,                                *
                                        *
       Intervenor Plaintiff         *   Appeal from the United States
       Below,                       *   District Court for the Western
                                        *   District of Arkansas.
    v.                                  *
                                        *
Design Equipment Company, a             *
Division of Griffith                    *
Laboratories; Stork Protecon,           *
B.V.,                                   *
                                        *
       Defendants-Appellees.        *

———————

Submitted:  February 12, 1997

Filed:  May 15, 1997

———————

Before BOWMAN and WOLLMAN, Circuit Judges, and BOGUE,[1] District Judge.

———————

BOWMAN, Circuit Judge.

On June 10, 1991, Maurice Porchia lost part of his right arm in an accident involving a Stork Protecon PMT-41 meat tenderizing

---

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

machine.  Porchia asserted negligence claims against both Stork Protecon, B.V. (Stork), manufacturer of the machine, and Design Equipment Company, a division of Griffith Laboratories (Griffith), seller of the machine to Porchia's employer.  In addition, Porchia sought to have both defendants held strictly liable for their respective roles as manufacturer and distributor of an allegedly unreasonably dangerous machine.  The case proceeded to trial, the jury returned a verdict in favor of Stork and Griffith, and the District Court[2] entered judgment in accordance with the verdict.  Porchia appeals, and we affirm.

In 1982, Porchia's employer, Smoky Hollow Foods, purchased the tenderizing machine in question and began utilizing it as a stand-alone unit into which meat product was fed manually.  Several months before Porchia's accident, however, Smoky Hollow Foods made numerous modifications to the machine in order to join the machine with other equipment to form a ham production line.  These modifications included removal of a metal hood guard that had served to prevent human contact with the machine's blades.

On the morning of the accident (one week after his employment with Smoky Hollow Foods began), Porchia received approximately thirty minutes of training before being given the responsibility to operate the ham production line for the first time.  That afternoon, some meat became lodged in the machine, so Porchia proceeded to shut down the equipment on the ham production line.  Unbeknownst to Porchia, the control panel turned off other equipment on the line, but it did not shut down the meat tenderizing machine.  Unaware of nearby metal tools that could be used to dislodge meat caught in the machine, Porchia tried to

---

[2]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

remove the meat by hand, and his glove became caught in the machine's blades, pulling in his right hand and forearm.

Judgment was entered in favor of the two defendants on both the negligence and the strict liability claims because the jury found Smoky Hollow Foods's conduct to be the sole intervening proximate cause of Porchia's injury. Porchia then filed a motion for a new trial, which the District Court denied.

On appeal, Porchia advances the same arguments he made in his motion for a new trial. He argues that the District Court erred by: (1) excluding evidence of subsequent remedial measures; (2) allowing defendants to refer to an Occupational Safety and Health Administration (OSHA) report concerning Smoky Hollow Foods; (3) permitting references to collateral sources of compensation; (4) allowing certain defense witnesses to testify despite defendants' noncompliance with Federal Rules of Civil Procedure governing discovery; (5) providing the jury an improper interrogatory; and (6) mishandling allegations of juror misconduct.

## I.

Because Porchia's first three arguments concern evidentiary decisions of the District Court, each decision is reviewed for abuse of discretion. See American Eagle Ins. Co. v. Thompson, 85 F.3d 327, 333 (8th Cir. 1996) (stating standard of review).

## A.

Porchia argues that the District Court abused its discretion in refusing to admit into evidence a postsale, preaccident user's manual for the meat tenderizing machine because the manual provided

evidence of subsequent remedial measures.  The excluded manual, published in 1991, details safety features added to the PMT-41 model since the time of Smoky Hollow Foods's purchase, and it explains safety features present on the machine as sold to Smoky Hollow Foods in an arguably better fashion than the manual that accompanied the machine.  Federal Rule of Evidence 407 provides that "evidence of . . . subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event" giving rise to the injury.  It is the law of this Circuit, however, that Rule 407 does not require the exclusion of subsequent remedial measures in strict liability cases.  See, e.g., Burke v. Deere & Co., 6 F.3d 497, 506 (8th Cir. 1993) (upholding admission of warning decal program and product modification program in strict liability case as evidence of subsequent remedial measures relevant to the existence of a product's dangerous defect), cert. denied, 510 U.S. 1115 (1994).[3]  Thus, the District Court was incorrect to the extent that it relied on Rule 407 to exclude the manual from evidence.

---

[3]In stating this rule, however, we reiterate concerns stressed by this Court in Burke, regarding the dangers inherent in an approach that varies the admissibility of subsequent remedial measures depending on whether an action lies in strict liability or negligence.  See, 6 F.3d at 506 n.11.  We again comment upon our minority position among our sister circuits and "note that it may indeed be wise to revisit the issue en banc in a proper case."  Id.; see also Buchanna v. Diehl Mach., Inc., 98 F.3d 366, 372 n.3 (8th Cir. 1996) (Beam, J., dissenting) (noting that nine circuits have squarely rejected and only one circuit has partially embraced this Circuit's application of Federal Rule of Evidence 407 in strict liability cases); Proposed Amendment to Federal Rule of Evidence 407, announced Apr. 11, 1997, 65 U.S.L.W. 4252 (Apr. 15, 1997) (providing that "evidence of . . . subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction").

Nevertheless, we hold that this was harmless error.[4]  Obviously, any error which might arise from the exclusion of evidence is harmless where the same facts are presented to the jury through other evidence.  See Monger v. Cessna Aircraft Co., 812 F.2d 402, 407-08 (8th Cir. 1987) (holding as harmless any error by district court regarding exclusion of supplement to owner's manual in strict liability case where same facts were shown by other evidence).  While the trial court did not allow the manual into evidence, Porchia's expert, William H. Ford, was allowed to testify as to his reliance on the manual in formulating his opinion concerning the machine's safety.  In fact, Ford testified that the 1991 manual discussed the addition to the machine of an emergency stop switch and various warning decals.  Additionally, he testified as to other safety features he believed should have been incorporated into the machine's design when sold in 1982 and as to other safety enhancements made by Smoky Hollow Foods since Porchia's accident.  Ford's testimony covered virtually all of the safety provisions outlined in the 1991 manual.  Despite the fact that, for the most part, Ford was not permitted to testify directly about the contents of the subsequent manual, the jury was fully aware of the feasibility of the subsequent remedial measures described in the manual and the possible role of these measures in avoiding Porchia's injury; thus, any error in excluding the manual from evidence was harmless.[5]

------

[4]In light of this holding, we need not determine whether the District Court's suggestions that the manual would burden the record and confuse the jury represent an abuse of that court's discretion.

[5]We note, as we have in previous cases, that it is unclear whether state or federal law governs the admissibility of subsequent remedial measures in diversity cases.  See, e.g., Donahue v. Phillips Petroleum Co., 866 F.2d 1008, 1013 n.10 (8th Cir. 1989).  Because we hold that any error in excluding the manual was harmless, we need not presently answer this question.

**B.**

Porchia contends that the District Court erred by allowing defendants' expert witness to refer in his testimony to an OSHA report prepared after an investigation into the working conditions at Smoky Hollow Foods at the time of Porchia's injury. (The report itself was not admitted into evidence.) Following the investigation, Smoky Hollow Foods reached a settlement with OSHA on citations issued for failure to provide adequate training to Porchia before his assignment to operate the meat tenderizing machine and for failure to provide the necessary controls to isolate the machine from all possible energy sources before Porchia attempted to unjam the machine. Porchia argues that this OSHA investigation is irrelevant to this products liability action.[6]

Porchia correctly points out that OSHA standards are applicable to employers and not to product manufacturers and distributors. Nevertheless, OSHA standards, investigations, and citations may be relevant in a products liability action where the fault of the employer is an issue in the case. See Johnson v. Niagara Mach. & Tool Works, 666 F.2d 1223, 1226 (8th Cir. 1981) (holding OSHA regulation relevant to the issue of employer's alleged negligence in products liability action against product's manufacturer). Because defendants argued that Smoky Hollow Foods's negligence was the sole proximate cause of Porchia's injury, the

---

[6]Porchia's argument that the OSHA report, titled "INFORMAL SETTLEMENT AGREEMENT," should be excluded under Federal Rule of Evidence 410 as evidence of a negotiated plea between Smoky Hollow Foods and OSHA is wholly without merit. Rule 410 concerns the inadmissibility of pleas and related statements offered "against the defendant who made the plea or was a participant in the plea discussions." Neither defendant in this case, however, was a party to this settlement agreement or involved in its discussions, nor was the agreement offered against either of them.

fault of Smoky Hollow Foods was squarely at issue.  Moreover, because the OSHA investigation occurred within a month of Porchia's injury and the ham production line has since undergone significant changes, information in the OSHA report was especially probative.  Accordingly, the District Court's ruling permitting defendants' expert to refer to the OSHA investigation in his testimony was not an abuse of discretion.

## C.

Porchia also alleges that he was prejudiced by references during the trial to collateral sources.  It is well established "that a plaintiff's collateral sources of compensation cannot be inquired into as part of a defendant's case, because of the danger that the jury may be inclined to find no liability, or to reduce a damage award, when it learns that plaintiff's loss is entirely or partially covered."  Moses v. Union Pac. R.R., 64 F.3d 413, 416 (8th Cir. 1995); see also Patton v. Williams, 680 S.W.2d 707, 708 (Ark. 1984).  As violations of the collateral sources bar, Porchia cites documents that discuss workers' compensation and that refer to Porchia as "claimant."  These documents, however, which were attached to the deposition of Richard Chosich, personnel manager for Smoky Hollow Foods, never were introduced into evidence.  In fact, the only reference at trial to any of the allegedly improper documents occurred during the reading of the deposition testimony of a former Smoky Hollow Foods employee, Sam Shaffer.  Shaffer was questioned about a report detailing an interview with Porchia, in which Porchia was referred to as "claimant," with no further mention of workers' compensation.  Because Porchia has pointed to no other portion of the record that even alludes to collateral sources and there is no evidence indicating lack of good faith on the part of defense counsel, we are unwilling to hold that the

report's references to "claimant" prejudiced Porchia so severely as to constitute reversible error. See Hofer v. Mack Trucks, Inc., 981 F.2d 377, 382-83 (8th Cir. 1992) (determining that references to collateral sources "were slight, if not downright obscure" and evidence of counsel's bad faith was lacking; thus, reversal of jury verdict was not warranted). Admission of this testimony was not an abuse of the District Court's discretion.

## II.

Porchia contends that the District Court abused its discretion in allowing three defense witnesses to testify despite allegedly substantial violations of Federal Rules of Civil Procedure 26(b)(4)(A), 26(e), and 35. Essentially, this argument represents a challenge to the District Court's rulings denying Porchia's motion to strike and exclude witnesses for failure to comply with Federal Rules of Civil Procedure 26 and 35 and denying Porchia's motion for a new trial. We will grant a new trial based on allegedly erroneous discovery rulings only if the alleged errors amount to a gross abuse of discretion and result in fundamental unfairness. See Bunting v. Sea Ray, Inc., 99 F.3d 887, 890 (8th Cir. 1996). "Therefore, our scope of review is both narrow and deferential." Id.

Porchia claims that Stork violated Rule 26 by failing to provide adequate and timely information concerning expert witnesses and Rule 35 by failing to provide a medical examiner's written report.[7] Initially, we note that Porchia did not enlist the District Court's assistance to obtain expert witness information,

---

[7]Even though the alleged discovery violations apply only to Stork, this issue is relevant to both defendants. While Griffith did not call any witnesses at trial, Griffith did rely on the testimony of at least one of the challenged witnesses.

to request additional time to prepare for these expert witness depositions, to redepose an expert witness when previously undiscovered information became available, or to obtain a written report from Stork's vocational rehabilitation expert.  Moreover, Porchia has not demonstrated how he was prejudiced by these alleged discovery abuses.  We find that the District Court's handling of these discovery issues did not amount to an abuse of discretion, much less a gross abuse of discretion.  See Bunting, 99 F.3d at 890 (finding no abuse of discretion concerning discovery rulings where appellant did not show how he was prejudiced or request the district court's help in addressing his discovery concerns).

## III.

Porchia alleges that the District Court erred by giving the jury Interrogatory No. 1 in lieu of various Arkansas Model Jury Instructions (AMIs).  A district court has broad discretion in instructing a jury and will be overturned only if the instructions taken as a whole fail to fairly and adequately present the law.  See Walton Gen. Contractors, Inc./Malco Steel, Inc. v. Chicago Forming, Inc., No. 96-1028, slip op. at 12-13 (8th Cir. Apr. 22, 1997).  As part of the broad discretion afforded district courts in instructing juries, a court sitting in diversity does not have to give the precise instructions set out in a state's approved instructions.  See id.; Wright v. Farmers' Co-Op, 620 F.2d 694, 698 (8th Cir. 1980) (noting that "unlike Arkansas trial courts, the district court was not required to follow exactly the applicable AMI").

Interrogatory No. 1 provides:

Do you find from a preponderance of the evidence that there was fault on the part of Plaintiff's employer, Smokey [sic]

Hollow Foods, Inc., completely independent of the conduct of Stork Protecon, B.V. and Design Equipment Company, a division of Griffith Laboratories, which itself was the sole proximate cause of Plaintiff's injury?

This interrogatory fairly and adequately presents Arkansas law concerning intervening cause. See Hill Constr. Co. v. Bragg, 725 S.W.2d 538, 540 (Ark. 1987) (explaining that a "jury may be instructed on intervening cause where a third party, who is not a party to the action, may have been negligent, just so the instruction makes it clear that the third party's negligence must be the sole proximate cause before a verdict for the defendant is required"); see also Chaney v. Falling Creek Metal Prods., Inc., 906 F.2d 1304, 1308 & n.7 (8th Cir. 1990) (stating above rule in products liability action applying Arkansas law and further noting that inclusion of employer as a phantom party in interrogatory apportioning fault would have helped to clarify legal effect of employer's conduct). Accordingly, Interrogatory No. 1, especially when viewed, as it must be, in conjunction with the other interrogatories and instructions, did not represent an abuse of the District Court's broad discretion.

## IV.

Finally, Porchia claims that the District Court erred in handling his allegations of juror misconduct and in denying his motion for a new trial based on this alleged misconduct. We review both of these claims for abuse of discretion. See Porous Media Corp. v. Pall Corp., No. 96-1552, slip op. at 22 (8th Cir. Apr. 8, 1997); United States v. Caldwell, 83 F.3d 954, 955 (8th Cir. 1996).

To support his allegation of juror misconduct, Porchia points only to an affidavit filed by his brother alleging that on the

-10-

third day of the trial, Porchia's brother was approached by the husband of one of the jurors. The juror's husband allegedly inquired as to why Smoky Hollow Foods had not been sued and indicated that his wife, as well as other jurors, had sought an answer to that question. Because Porchia's allegations did not assert that any extraneous information actually reached a jury member and because he offered nothing to suggest that he was prejudiced by the jury's exposure to any extraneous information, the District Court acted well within its discretion in determining that these speculative allegations did not merit further investigation and in denying Porchia's motion for a new trial based on this alleged juror misconduct. See Porous Media, slip op. at 22-23 ("In a civil case, the exposure of extraneous evidence to the jury 'mandates a new trial only upon a showing that the materials are prejudicial to the unsuccessful party.'") (quoting Banghart v. Origoverken, A.B., 49 F.3d 1302, 1306 (8th Cir. 1995)); Caldwell, 83 F.3d at 956-57 (concluding that district court was correct in determining that speculative allegations of improper communications between jury and a juror's spouse did not warrant further investigation).

**V.**

The judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-